UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION and
OFFICE OF THE ATTORNEY
GENERAL, STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

    Plaintiffs,

v.                                Case No:   6:16-cv-982-Orl-41TBS

LIFE MANAGEMENT SERVICES OF
ORANGE COUNTY, LLC, LOYAL
FINANCIAL & CREDIT SERVICES, LLC,
IVD RECOVERY, LLC, KWP SERVICES,
LLC, KWP SERVICES OF FLORIDA
LLC, LPSOFFLA LLC, LPSOFFLORIDA
L.L.C., PW&F CONSULTANTS OF
FLORIDA LLC, UAD SECURE
SERVICES LLC, UAD SECURE
SERVICE OF FL LLC, URB
MANAGEMENT, LLC, YCC SOLUTIONS
LLC, YFP SOLUTIONS LLC, KEVIN W.
GUICE, CHASE P. JACKOWSKI, LINDA
N. MCNEALY, CLARENCE H. WAHL,
KAREN M. WAHL, ROBERT GUICE and
TIMOTHY WOODS,

    Defendants.

## REPORT AND RECOMMENDATION

The district judge has referred the Receiver's Motion for Approval of Settlement Agreement Relating to the Tuff Life II and for Authority to Sell Yacht (Doc. 90) to me for a report and recommendation. After due consideration I respectfully recommend that the motion be **granted**.

### Background

Plaintiffs the Federal Trade Commission and Office of the Attorney General, State

of Florida, Department of Legal Affairs bring this action for a permanent injunction and other equitable relief pursuant to § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (2015) (Doc. 1). In sum, Plaintiffs allege that Defendants engaged in a telemarketing scheme intended to defraud financially distressed consumers by selling them phony debt relief services (Id., ¶ 3).

On Plaintiffs' motion, the Court entered a temporary restraining order which, among other things, froze Defendants' assets (Doc. 36 at 10-12). The Court also appointed a temporary receiver ("Receiver") for the corporate Defendants, their affiliates, subsidiaries, divisions and operations (Id., at 18-22). The Court subsequently entered a preliminary injunction which continued the asset freeze and converted the Receiver from a temporary to permanent receiver (Doc. 89 at 15-20).

Plaintiffs allege that Defendant Robert Guice was an officer and managing member of Defendant Loyal Financial & Credit Services, LLC (Doc. 1, ¶ 37). They contend that Guice "formulated, directed, controlled, had the authority to control, or participated in the" unlawful acts alleged in the complaint (Id.). Plaintiffs also allege that Guice "received funds that can be traced directly to Defendants' deceptive acts or practices" and that "he has no legitimate claim to those funds." (Id., ¶ 42). Guice has asserted his Fifth Amendment Right against self-incrimination as grounds for refusing to answer these allegations (Doc.73, ¶ 2).

Guice owns a 55' ocean yacht named the Tuff Life II which is currently docked at Port Canaveral (Doc. 90 at 3). The Receiver contends that this yacht was purchased and refurbished with funds that originated from one of the Defendants that is in receivership

(Id., at 4). The Receiver believes he can make a claim to the yacht under various legal and equitable theories including constructive trust and fraudulent transfer (Id.). The cost to maintain the yacht, including insurance, slip fees and other maintenance expenses is approximately $1,500 per month (Id.). If the expenses are not paid, then the yacht is at risk of declining in value due to a general lack of maintenance, and it may be liened for unpaid slip fees (Id., at 3-4). The asset freeze prevents Guice from paying these expenses and the Receiver is unwilling to make the payments absent a benefit to the receivership estate (Id., at 4). Under the circumstances, the Receiver and Guice have agreed, subject to Court approval, to the sale of the yacht at a public, absolute auction for the benefit of the receivership estate (Doc. 90-1). In making this agreement, Guice does not admit to the facts upon which the Receiver makes his claims, and Guice does not waive his Fifth Amendment rights (Doc. 90 at 4).

The parties' agreement provides for the sale of the yacht at absolute auction to the highest bidder for cash (Doc. 90-1, ¶ 2). The yacht will be sold "as-is, where-is," without representations or warranties of any kind (Doc. 90 at 5). The auction will include a 10% buyer's premium which means the final sales price will be the amount of the successful bid plus 10% (Id., at 6). The auctioneer will receive 75% of the buyer's premium and 5% of the total price (including the buyer's premium). The Receiver will also reimburse the auctioneer up to $3,000 for marketing costs (Id.). All remaining proceeds will be disbursed to the Receiver to hold pending direction from the Court (Doc. 90-1, ¶ 3). Guice will not receive any sales proceeds (Id.).

The Receiver proposes to engage John Harris of Harris Auctions, LLC as auctioneer (Doc. 90 at 5). The Receiver represents that he has employed Harris in the past to liquidate yachts, boats, dump trucks, bulldozers, hotels, luxury real estate, coins,

sports memorabilia, high-end jewelry, guns, and luxury vehicles (Id.). The Receiver also represents that Harris has been employed under federal court order on several prior occasions (Id., fn. 2). The Receiver represents that because of their long-standing relationship, the proposed auctioneer's fee is below the customary rate (Id., at 6).

The Receiver asserts that the advantages of the absolute auction being proposed include that it guarantees that the yacht will be sold quickly and that if marketed properly, the auction should bring all interested potential purchasers into one forum at the same time (Id., at 5). The Receiver also represents that he routinely conducts public auctions of property that is in receivership and that with proper advance marketing, auctions are the best way to maximize the value of property to be sold (Id.).

### Applicable Law

"[T]he district court has broad powers and wide discretion to determine relief in an equity receivership." S.E.C. v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992), *rev'd in part on other grounds*, 998 F.2d 922 (11th Cir. 1993). This includes the power to permit a receiver to sell property where appropriate to protect the receivership estate. Id.; see also (Doc. 89). The sale of personalty by public auction is permitted by 28 U.S.C. §§ 2001 and 2004.

The district court may also authorize a private sale of property. 28 U.S.C. § 2001(b) and 2004. The process requires a hearing with notice to all interested parties by publication or some other method the court directs. Id. The court may than approve the sale "if it finds that the best interests of the estate will be conserved thereby." Id. Before the sale can be confirmed, the court must appoint "three disinterested persons to appraise [the property]," and the proposed sale price must be at least two-thirds of the appraised value. Id. The terms of the sale must also "be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall

not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale." Id.

## Discussion

The Receiver contends, and Guice has not disputed, that the yacht is property of the receivership estate. Accordingly, the Court may authorize the sale. Whether the yacht should be sold now, as well as the method and terms of sale are matters of business judgment. The Receiver has not provided the Court with an opinion of the fair market value of the yacht, which he characterizes as an "expensive asset" (Doc. 90 at 7). No doubt this is a reference to the $1,500 per month cost to maintain the vessel. If nobody pays these costs, and the yacht is not sold, then in all likelihood, whatever value it may have to the receivership estate will diminish over time until ultimately, it is worthless.

The Receiver argues, and I agree, that the statutory requirements for a private sale are less desirable than a public auction. First, the private sale process will likely take longer to complete than an auction. During this period maintenance expenses will continue to accrue. Second, the appraisal process adds additional sales expenses. Third, potential purchasers may not be interested in participating in a process which allows a third party to come in at the end and buy the yacht. Fourth, the Receiver represents that the industry standard for yacht brokers is a 10% sales commission (Id. at 7). Depending upon the amount for which the yacht is sold, there may not be a significant difference between the auctioneer's fee and a broker's fee.

After due consideration I find the sale of the yacht at this time to be consistent with the goal of marshaling assets for the victims of the schemes alleged in Plaintiffs' complaint. The proceeds may also be necessary to permit the Receiver to continue with

the performance of his Court ordered obligations. Lastly, I am unaware of any reason not to trust the Receiver's business judgment.

## Recommendation

For these reasons, I respectfully recommend that the Receiver's motion for approval (Doc. 90) be **GRANTED**, that the Receiver's agreement with Guice (Doc. 90-1) be **APPROVED**, and that the Receiver be directed to **SELL** the yacht in accordance with the agreement and motion for approval.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on July 14, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties