UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION and
OFFICE OF THE ATTORNEY
GENERAL, STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

    Plaintiffs,

v.                                    Case No:   6:16-cv-982-Orl-41TBS

LIFE MANAGEMENT SERVICES OF
ORANGE COUNTY, LLC, LOYAL
FINANCIAL & CREDIT SERVICES, LLC,
IVD RECOVERY, LLC, KWP SERVICES,
LLC, KWP SERVICES OF FLORIDA
LLC, LPSOFFLA LLC, LPSOFFLORIDA
L.L.C., PW&F CONSULTANTS OF
FLORIDA LLC, UAD SECURE
SERVICES LLC, UAD SECURE
SERVICE OF FL LLC, URB
MANAGEMENT, LLC, YCC SOLUTIONS
LLC, YFP SOLUTIONS LLC, KEVIN W.
GUICE, CHASE P. JACKOWSKI, LINDA
N. MCNEALY, CLARENCE H. WAHL,
KAREN M. WAHL, ROBERT GUICE and
TIMOTHY WOODS,

    Defendants.

## REPORT AND RECOMMENDATION

    This case is before the Court without oral argument on the Receiver's Verified Second Application for Payment for Services Rendered and Reimbursement for Costs Incurred (Doc 181). Receiver Mark J. Bernet represents that the motion is not opposed (Id., at 1-2). For the reasons that follow, I respectfully recommend that the motion be granted.

## I. Background

Plaintiffs allege that since 2013, Defendants have "engaged in a telemarketing scheme that defrauds financially distressed consumers by selling them two types of phony debt relief services: credit-card interest-rate-reduction services ... and credit-card debt-elimination services." (Doc. 1, ¶3). Plaintiffs are suing Defendants to obtain preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten monies, consumer redress and other relief (Id., ¶¶ 1-2).

On Plaintiffs' motion, the Court entered a temporary restraining order which, among other things, froze Defendants' assets and appointed attorney Mark J. Bernet as temporary receiver for the corporate Defendants, their affiliates, subsidiaries, divisions and operations (Doc. 36 at 10-22). Later, the Court entered a preliminary injunction which continued the asset freeze and converted the Receiver from a temporary to permanent receiver (Doc. 89 at 15-20). The Receiver's duties include assuming full custody, possession, management and control of the corporate Defendants (Id., at 16).

Per Court Order, the Receiver is entitled to payment of a reasonable fee and reimbursement of his actual out-of-pocket expenses:

> It is **FURTHER ORDERED** that the Receiver, and all Persons hired by the Receiver as authorized under this Order, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, Corporate Defendants. The Receiver shall file with the Court and serve on the parties' periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as

> the bases for such fee applications without prior approval of the Court.

(Doc. 89 at 24).

On November 28, 2016, the Court approved payment of $42,900 in fees to the Receiver based upon a rate of $325 per hour (Doc. 118 at 2). But, it denied without prejudice, the Receiver's request for reimbursement of $1,488.33 in costs due to a lack of appropriate documentation (Id.). The pending motion seeks $41,990 for the Receiver's services rendered between August 23, 2016 and March 24, 2017 and reimbursement of $3,104.51 in actual, out-of-pocket expenses, which includes the $1,488.33 previously not approved (Doc. 181 at 1).

## II. Applicable Law

In Stuart v. Boulware, 133 U.S. 78, 82, 10 S.Ct. 242, 33 L.Ed. 568 (1890) the Supreme Court said:

> Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which [the receiver] derives his appointment. The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to [the receiver], and the perplexity and difficulty involved in that management.

The Court employs the lodestar approach as the first step in calculating a reasonable fee for the Receiver's services. "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he fee applicant bears the burden

of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Storfer v. Guarantee Trust Life Ins. Co., 666 F.3d 1277, (11th Cir. 2011) (citing Insurance Co. of North America v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991). "[T]he lodestar as calculated in Hensley presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." Norman, 836 F.2d at 1299. The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19 (abrogated on other grounds by Blanchard v. Bergeron, 109 S.Ct. 939, 489 U.S. 87, 103 L.Ed.2d 67 (1989)).

Once the Court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors including the results obtained. Storfer v. Guarantee Trust Life Ins. Co., 666 F.3d 1277, (11th Cir. 2011) (citing Insurance Co. of North America v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). The Court is "an expert on

the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

The amount of time billed is viewed as "the most useful starting point for determining the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The fee applicant should present records detailing the amount of work performed. Once the prevailing party produces adequate billing records, the fee opponent "has the burden of pointing out with specificity which hours should be deducted." Rynd v. Nationwide Mutual Fire Ins. Co., No. 8:09-cv-1556-T-27TGW, 2012 U.S. Dist. LEXIS 37973, * 9 (M.D. Fla. Jan. 25, 2012) (quoting Centex-Rooney Const. Co., Inc. v. Martin County, 725 So.2d 1255, 1259 (Fla. App. Ct. 1999).

"When awarding an attorney's fee, the '[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.'" Oden v. Vilsack, No. 10-00212-KD-M, 2014 WL 4046456, at *4 (S.D. Ala., Aug. 9, 2013) (quoting Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

### III. Attorney's Fees

The Court previously found the Receiver's $325 per hour rate reasonable and I see no reason to deviate from that determination (Doc. 118 at 2). During the relevant time period the Receiver expended 129.2 hours on work that included: (1) the discovery and

sale of the 55' ocean yacht Tuff Life II; (2) taking fifteen depositions[1] to learn about the corporate Defendants' operations including their receipt and transfers of funds; (3) obtaining an order to compel Chase Jackowski to answer questions he had refused to answer; (4) engaging in settlement negotiations with the recipients of ill-gotten funds; (5) tracing transfers of money received by Defendants; and (6) preparing and filing a motion for disgorgement (Doc. 181 at 2, 5-10). The Receiver's $325 hourly rate, multiplied by 129.2 hours worked results in a fee of $41,990. In order to evaluate the reasonableness of this amount I have considered each of the Johnson factors:

(1) The Time and Labor Required. The Receiver's time records and the description of services rendered, contained in the motion, support a finding that the time and labor expended is reasonable (Id., at 5-10; Doc. 181-1).

(2) The Novelty and Difficulty of the Work. The Receiver's efforts to understand bank and accounting records in order to trace and locate funds was difficult work, that was made harder by the individual Defendant's failure to cooperate with the Receiver (Doc. 181 at 12).

(3) The Skill Requisite to Perform the Legal Services Properly. This work required a person with good judgment and substantive legal and business knowledge, all of which the Receiver appears to possess.

(4) The Preclusion of other Employment. The Receiver represents that his acceptance of this assignment prevented him from working on other matters for clients who pay his regular hourly rate (Id.).

(5) The Customary Fee. The Receiver is seeking compensation at a rate $140

---

[1] Chase Jackowski and Wanye Norris were both deposed twice (Doc. 181 at 7).

below his customary fee. Additionally, a rate of $325 per hour is well within the range for similar services performed by attorneys of comparable experience in this district.

(6) <u>Whether the Fee is Fixed or Contingent</u>. The work was not done on a contingent fee basis but, the Receiver's fees are subject to Court approval.

(7) <u>Time Limitations Imposed by the Client or Circumstances</u>. This factor is not applicable to the services for which the Receiver seeks compensation.

(8) <u>The Amount Involved and the Results Obtained</u>. The Receiver represents that he has collected in excess of $250,000 and has good prospects for additional recoveries (<u>Id.</u>, at 13).

(9) <u>The Experience, Reputation, and Ability of the Receiver</u>. The Receiver is a 1986 graduate of the Notre Dame Law School, where he was a member of the law review. He holds an AV rating from Martindale Hubbell, and has received multiple receivership appointments in cases involving allegations of fraudulent misconduct and unlawful business practices (<u>Id.</u>).

(10) <u>The Undesirability of the Case</u>. This factor is not applicable to the services for which the Receiver seeks compensation.

(11) <u>The Nature and Length of the Professional Relationship with the Client</u>. This factor is not applicable to the services for which the Receiver seeks compensation.

(12) <u>Awards in Similar Cases</u>. The fees requested by the Receiver are in line with the fees charged by receivers in other cases that have come before the Court. In addition, the Receiver represents that he has not charged for travel time and that he recorded only ninety percent of the time he actually spent working on this case.

After considering all of these factors, I find the hours billed by the Receiver and the hourly rate charged are reasonable. Accordingly, I recommend approval of the Receiver's

hourly rate, hours worked, and total fee of $41,990.

## IV. Costs

The Receiver has submitted his own affidavit including an itemization of costs and some receipts in support of his request for reimbursement in the amount of $3,104.51. The Receiver seeks reimbursement of $29.29 for drinks and snacks for the team that served the temporary restraining order and took control of the corporate Defendants; $672.04 for the services of a locksmith; $85.00 to open a new post office box; and $2,318.18 in mileage billed at the reimbursement rates approved by the Internal Revenue Service for 2016 and 2017 (Doc. 181-2). All of these charges are, in my view, reasonable. Accordingly, I respectfully recommend that payment be approved.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Receiver's motion be **GRANTED**, and that the Court approve payment to the Receiver of **$41,990** in fees and **$3,104.51** in costs.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 9, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties