UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION and
OFFICE OF THE ATTORNEY
GENERAL, STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

      Plaintiffs,

v.                                                                          Case No:   6:16-cv-982-Orl-41TBS

LIFE MANAGEMENT SERVICES OF
ORANGE COUNTY, LLC, LOYAL
FINANCIAL & CREDIT SERVICES, LLC,
IVD RECOVERY, LLC, KWP SERVICES,
LLC, KWP SERVICES OF FLORIDA
LLC, LPSOFFLA LLC, LPSOFFLORIDA
L.L.C., PW&F CONSULTANTS OF
FLORIDA LLC, UAD SECURE
SERVICES LLC, UAD SECURE
SERVICE OF FL LLC, URB
MANAGEMENT, LLC, YCC SOLUTIONS
LLC, YFP SOLUTIONS LLC, KEVIN W.
GUICE, CHASE P. JACKOWSKI, LINDA
N. MCNEALY, CLARENCE H. WAHL,
KAREN M. WAHL, ROBERT GUICE and
TIMOTHY WOODS,

      Defendants.

_____

## REPORT AND RECOMMENDATION

Pending before the Court is the Receiver's Motion to Compel Disgorgement of

Assets from Defendant Kevin Guice and his Spouse, Shannon Guice, to Impose

Constructive Trust, and for Other Equitable Relief (Doc 198). The motion is supported by

the Receiver's Declaration (Doc. 199-1). Kevin and Shannon Guice filed a response in

opposition (Doc. 221). Upon due consideration, I respectfully recommend that the motion

be **granted in part**.

## Background

On June 7, 2016, Plaintiffs, the Federal Trade Commission ("FTC") and the Office of the Attorney General for the State of Florida, filed their Complaint for Permanent Injunction and Other Relief against Defendants Life Management Services of Orange County, LLC, Loyal Financial & Credit Services, LLC, IVD Recovery, LLC, KWP Services, LLC, KWP Services of Florida LLC, LPSofFLA LLC, LPSofFlorida L.L.C., PW &F Consultants of Florida LLC, UAD Secure Service of FL LLC, UAD Secure Services LLC, URB Management, LLC, YCC Solutions LLC, YFP Solutions LLC (collectively the "Receivership Defendants"), Kevin W. Guice, Chase P. Jackowski, Linda N. McNealy, Clarence H. Wahl, and Karen M. Wahl, and Relief Defendants Robert Guice and Timothy Woods (Doc. 1). Plaintiffs alleged that Defendants operated their businesses in violation of § 5(a) of the FTC Act, 15 U.S.C.A. §45(a); the Telemarketing Sales Rule, 16 CFR Part 310; and the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201 *et seq.* On motion, the Court entered a Temporary Restraining Order and Asset Freeze, and appointed Mark J. Bernet as Receiver for the Receivership Defendants (Doc. 36). Preliminary injunctions followed (Docs. 75-81, 83, 89, 99) and the claims were settled as to all Defendants, except Kevin Guice.

Plaintiffs moved for summary judgment against Kevin Guice, arguing that he owned and controlled the Receivership Defendants, through which he sold fraudulent debt-relief services to more than 10,000 people throughout the United States, causing more than $23 million in consumer harm (Doc. 163).

While the summary judgment motion was pending the Receiver filed a Motion to Establish Summary Procedures for the parties to follow in connection with a to-be-filed motion to compel disgorgement of assets from Kevin Guice and his wife, Shannon Guice

(Doc. 171). The Receiver explained that the proposed motion "would seek to recover almost $8.6 million that was transferred from the Receivership Defendants to the Defendant Kevin Guice and his spouse, Shannon Guice, which they used to purchase luxury goods (such as watches and jewelry), golf clubs, vehicles, sports memorabilia, a house, and various other goods and services" (Doc. 171 at 1). The Receiver advised that "he also would request that the Court impose a constructive trust over the Guices' assets, in favor of the Receivership estates, on the Guices' tangible real and personal property, including their homestead, and then authorize the Receiver to liquidate the property subject to the constructive trust." (Id., at 1-2). The Court granted the motion to establish summary procedures, directed the Receiver to file his motion for disgorgement, and directed service on Shannon Guice (Doc. 197). The instant motion for disgorgement and Receiver's declaration with exhibits followed (Docs. 198, 199), as did the Guices' response (Doc. 221).

The Court granted Plaintiffs' motion for summary judgment on December 7, 2018 (Doc. 225). As detailed in the summary judgment Order, Defendants engaged in a common enterprise that was controlled and directed by Kevin Guice (Doc. 225). At his direction, this enterprise made material misrepresentations and omissions when selling services to the public (Id.). The Court determined that Plaintiffs are entitled to $23,099,878.02 in restitution on behalf of the consumers who were deceived by Kevin Guice and the other Defendants (Id., at 35-36). Pursuant to the Order, the Clerk entered judgment for Plaintiffs and against Kevin Guice, in the amount of $23,099,878.02 (Doc. 226). The Court also issued a permanent injunction and ordered, *inter alia*, the transfer of certain assets to the FTC, including funds previously held in two bank accounts titled jointly in Kevin and Shannon Guice's names (Doc. 225 at 41-51).

After the Court entered its summary judgment, I held a hearing to determine what the parties believe is still at issue (Docs. 228, 230). Now, with the benefit of their input, I make the following recommendations.

## Standard of Review

Because the summary procedure Order referenced Rule 56, FED. R. CIV. P., and the relevant facts have already been determined by the Court, I review the Receiver's motion under the Rule 56 standard. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. Id. In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden then the burden shifts to the non-moving party to "go beyond the pleadings," meaning the non-movant must either (i) present specific evidence showing that there is a genuine issue of material fact; or (ii) show by other means that the moving party is not entitled to judgment as a matter of law. Id. at 324–26. In reviewing the record

evidence, "the Court may not undertake the jury's function of weighing the evidence properly offered by the parties." Gordilis v. Ocean Drive Limousines, Inc., No. 12-cv-24358-JLK, 2014 WL 2214274, *1 (S.D. Fla. May 28, 2014), citing Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir.2010) ("Neither we nor the district court are to undertake credibility determinations or weigh the evidence.").

## Discussion

The Receiver alleges that between January 2, 2013, and June 8, 2016, Kevin and Shannon Guice received at least $8,593,352.60 directly from the Receivership Defendants' telemarketing businesses, in 419 separate transfers, for which they did not provide reasonably equivalent value. The Guices allegedly used this money to purchase a Porsche, 2 jet skis, their homestead, approximately 20 luxury watches, 2 guns, and other property. The Receiver seeks an order (i) compelling Kevin and Shannon Guice to return or disgorge the $8,593,352.60, (ii) imposing a constructive trust over assets of the Guices, including their homestead, (iii) compelling the Guices to turn over the assets over which the Court imposes a constructive trust, and (iv) authorizing the Receiver to liquidate the assets over which the Court imposes a constructive trust (Doc. 198 at 1).

The Receiver argues that the Guices should be ordered to return the $8,593,352.60 they received from the Receivership Defendants because the transfers were fraudulent under Florida law. The Receiver also argues that this money should be disgorged under the doctrine of unjust enrichment as the Guices have no legitimate entitlement to the funds. The Guices have interposed several defenses to these theories. In view of the district judge's summary judgment findings, any defenses that go to the issue of liability have already been determined against Kevin Guice. The Court decided that there were ill-gotten gains that flowed to him from the enterprise. What remains to be

decided is whether the Receiver can recover the proceeds of those monies from Kevin Guice and Shannon Guice.

*Fraudulent Transfers*

"After a corporation, which was used by its principals to defraud investors, has been "cleansed" through receivership the corporation has viable claims against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." Sallah ex rel. MRT LLC v. Worldwide Clearing LLC, 860 F. Supp. 2d 1329, 1334 (S.D. Fla. 2011) (internal citation omitted). Under the constructive fraud provision of Florida's fraudulent transfer statute:

> 1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> * * *
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

FLA. STAT. § 726.105(1)(b).

Here, the Receiver must show (1) that the Receivership Defendants transferred assets to the Guices; (2) that the Receivership Defendants did not receive a reasonably equivalent value in return for the assets they transferred to the Guices, and (3) that at the

time of the transfers, the Receivership Defendants either (i) were engaged or about to engage in a business for which their remaining assets were unreasonably small in relation to the business, or (ii) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due. The Receiver has proven all of these elements.

### 1. Transfers were made to the Guices

The Receiver has shown that over a 3½-year period the Receivership Defendants made 419 transfers of money, totaling $8,593,352.60, to the Guices (Doc. 198, ¶ 19; 198-1 through 198-9). The Guices argue that the Receiver has not established that any of these transfers were made to Shannon Guice and consequently, this element has not been proven as to her. I disagree. During the relevant time period the money was transferred into the Guice's joint bank accounts (Doc. 230 at 19), and the Court has included those accounts in its summary judgment findings. This is sufficient to establish the first element.

### 2. Reasonably equivalent value was not provided

As candidly admitted by counsel at the hearing, the findings made by the Court in its summary judgment Order establish this element in the Receiver's favor.

### 3. The transactions left insufficient assets to pay creditors

The Receiver argues that by transferring more than one-third of their assets to the Guices, the Receivership Defendants had to know that the remaining two-thirds would be insufficient for them to pay their debts to consumers arising from their unlawful telemarketing scheme because all of the assets were obtained illegally, and were therefore, owed to the consumers from whom they were wrongfully taken. As the wrongdoing has been established by the Court's summary judgment Order, I find that

after the transfers of $8,593,352.60 to the Guices, the Receivership Defendants remaining assets were unreasonably small in relation to their business, thus establishing the third element. As all of the elements have been satisfied, all of the transfers at issue are constructively fraudulent under Florida law.

*Unjust Enrichment/Disgorgement*

"A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." SEC v. Elliott, 953 F.2d 1560, 1569-70 (11th Cir. 1992). The Receiver argues that the equitable remedy of disgorgement is appropriate here because the Guices cannot show a legitimate claim to the wrongly obtained money and thus have been unjustly enriched. Commodities Future Trading Commission v. Sidoti, 178 F.3d 1132 (11th Cir. 1999) (disgorgement is an equitable remedy to correct unjust enrichment), FTC v. Transnet Wireless Corp., 506 F. Supp 2d 1247, 1273 (S.D. Fla. 2007) (federal courts can be employed to recover ill-gotten gains for the benefit of the victims of wrongdoing, whether held by the original wrongdoer or by one who has received the proceeds of the wrong), and Fito v. Attorneys' Title Insurance Fund, Inc., 83 So. 3d 755, 758 (Fla. 3d DCA 2011) (elements of unjust enrichment are that defendant knowingly received a benefit, accepted and retained the benefit, and equity requires the return of the benefit).

The Guices acknowledge that the remedy of disgorgement is available to the FTC as one of its statutory powers,[1] but argue nothing in the statute or the cases cited

---

[1](3) Equitable remedies:
In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including--
(A) restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses); and
(B) disgorgement of gains received in connection with such violation.
7 U.S.C. § 13a-1(d)(3).

extends the FTC's right to pursue disgorgement to a receiver. I am not convinced. While

the FTC Act addresses the power of "the Commission" to seek equitable remedies, there

is no basis to conclude that the Receiver is acting pursuant to the FTC Act. The Receiver

did not cite the FTC Act as the basis for the relief he seeks. Instead, he relies on general

equitable principles. Those principles apply since the Receiver has been given "the full

power of an equity receiver," including full power over "choses in action" belonging to the

Receivership Defendants (Doc. 36 at 18). The Receiver is charged with preventing the

loss of all assets of the Receivership Defendants, and has "full power to sue for, collect

and receive" all such assets. (Id. at 19). He is charged with the duty to "[p]revent the

inequitable distribution of assets and determine, adjust, and protect the interests of

consumers and creditors who have transacted business with [the Receivership]

Defendants" and may institute, appear in or otherwise become party to any legal action

"to preserve or recover the assets of [the Receivership] Defendants, or to carry out the

Receiver's mandate under this Order, including actions challenging fraudulent or voidable

transfers." (Id. at 20-21, emphasis added). To the extent disgorgement of ill-gotten gains

is a remedy as opposed to a cause of action,[2] the Receiver has standing to pursue this

relief.

The Guices object to the Receiver seeking imposition of a constructive trust on

their assets under a state law unjust enrichment theory. Under Florida law, the elements

of a cause of action for unjust enrichment are: "(1) plaintiff conferred a benefit on a

defendant who has knowledge of that benefit; (2) defendant accepted and retained the

---

[2] See Cushman & Wakefield, Inc. v. Office Depot, Inc., No. 08-80321-CIV-
MIDDLEBROOKS/JOHNSON, 2008 WL 11409887, at *3 (S.D. Fla. Nov. 3, 2008) ("Disgorgement is a
remedy for an unjust enrichment action, and not an independent cause of action.").

benefit and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1165 (S.D. Fla. 2015) (internal citations omitted); see also Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir.1999). "Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013), quoting Butler v. Trizec Props., Inc., 524 So.2d 710, 711 (Fla. 2d DCA 1988). The Guices contend that Shannon Guice is not a Defendant in this action and is an innocent spouse. They claim that all the alleged transfers went directly to Kevin Guice, and the Receiver has not shown that Shannon Guice "knowingly" accepted any transfers of funds from her husband that are traceable to the Receivership Defendants (Doc. 221 at 11). The record belies these contentions.

Shannon Guice is not a stranger to these transactions (Doc. 230 at 18-20). The money was deposited into the couples' joint accounts and Shannon Guice was clearly aware of the deposits. She testified at deposition that she moved major amounts of funds out of the joint bank accounts, noting: "I did a lot of wires." (Id.)[3] Although Shannon Guice acknowledged that she was aware of deposits into the couples' joint bank accounts, she raised spousal privilege to refuse to divulge further information (Doc. 198 at 19). She also

---

[3] At hearing, counsel purported to quote page 26, lines 10 through 15 of the deposition of Shannon Guice and cites to other excerpts in his motion papers. Although I am relying on counsel's quotations and characterization of Ms. Guices' testimony throughout his papers, it does not appear that the deposition itself is in the record. Counsel for the Receiver is **ORDERED** to file the deposition for the District Court's review or, if the deposition has been filed, to advise the Court as to where it can be located.

testified at deposition that she was not employed in 2013 or thereafter (Doc. 199-1, ¶ 18) and could not tell whether her husband worked at all (Doc. 198 at 15, citing 6/20/2016 Deposition of Shannon Guice at 42:3-23).[4] Considering the large amounts of money involved, the absence of any articulated legitimate source of the income,[5] and the findings of the Court in the summary judgment Order, I find no genuine issue of material fact regarding Shannon Guice's innocent bystander claim. It is untenable. The Receiver has established all the requirements for application of the doctrine of unjust enrichment.

*Remedies*

Ordinarily, the remedy for a fraudulent transfer is to avoid it and direct the return of the asset. <u>See</u>, <u>generally</u>, FLA. STAT. §726.108(1). Similarly, unjust enrichment is remedied by return of the unlawfully obtained property or gains. <u>See</u> <u>FTC v. NPB Advert., Inc.</u>, 218 F. Supp. 3d 1352, 1366 (M.D. Fla. 2016) ("Equity permits the remedy of disgorgement if the defendant cannot show a legitimate claim to 'ill-gotten' proceeds."). As detailed by the Receiver in his motion and declaration (Doc. 199-1) and further supported by the declarations and forensic accounting analysis prepared by Emil T. George (Doc. 163-33, and 163-38), the Receiver is entitled to an order finding that the Guices received $8,593,352.60 in ill-gotten gains. The Court should avoid the underlying

---

[4] Kevin Guice likewise claims no employment or other income during the relevant time period. This despite the fact that the Guices' 2013 joint federal tax return shows that they reported adjusted gross income for 2013 of $688,472.00, which understates the actual income they received. Schedule E to the Guices' 2013 federal tax return shows that they received $693,268 from Loyal Financial, but nothing from any other source. In fact, the Guices received more than $1.6 million in 2013 from Loyal Financial alone. The Guices' 2014 federal return shows adjusted gross income of $460,869, consisting primarily of (i) $652,447 as income from Loyal Financial, and (ii) deductions of $266,631.00 for expenses associated with the yacht the *Tuff Life II*. The Guices failed to report any income from any other source. The Guices have failed to provide their 2015 or 2016 federal tax returns. <u>See</u> Receiver's Declaration, ¶¶ 13-25.

[5] The Receiver found no evidence that the Guices received income from any source other than the Receivership Defendants in 2013-2016. Consequently, all their expenditures came from money Kevin Guice fraudulently transferred to the couple's joint accounts.

transfers of this money and order Kevin and Shannon Guice to return or disgorge the money to the Receiver.

But that is not all the Receiver seeks. The uses and whereabouts of all the money is unknown, Kevin Guice has invoked his Fifth Amendment privilege, and Shannon is also not talking. Because the Guices refuse to account for or turn over the money they received, the Receiver seeks imposition of a constructive trust over all the couple's assets, and an Order authorizing the Receiver to liquidate those assets to recover the money. The Guices have raised numerous objections.

*(a) The Statute of Limitations*

In Florida, claims for fraudulent transfer and unjust enrichment are subject to a four-year statute of limitations. See FLA. STAT. §§ 95.11, 726.110. The limitations period begins to run when the Receiver's "cause[s] of action accrue[d]"–that is, "when the last element constituting the cause[s] of action occur[red]." See FLA. STAT. § 95.031(1); see also Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013) (applying four-year limitation to claims for quantum meruit and unjust enrichment). The Guices argue that since the Receiver filed his motion to disgorge on June 7, 2018, any transfers made prior to June 7, 2014 are outside the limitations period.

The Receiver relies on the "evil zombie" doctrine which provides that while bad actors are controlling a company, causes of action are not discovered and not discoverable. See Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995) ("The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys–for the benefit not of Douglas but of innocent investors–that Douglas had made the corporations divert to unauthorized purposes."). I am persuaded

that application of the doctrine serves to toll the statute of limitations. See, e.g., Wiand v. Morgan, 919 F. Supp. 2d 1342, 1370 (M.D. Fla. 2013) ("While Nadel controlled Traders and the hedge funds, the scheme and fraudulent transfers were concealed and could not reasonably have been discovered as a matter of law."); In re Blackburn, 209 B.R. 4, 13 (M.D.Fla.1997) (statute of limitation tolled until appointment of receiver); Wing v. Kendrick, No. 2:08–CV–01002–DB, 2009 WL 1362383, *3 (D.Utah 2009) (claims filed within one year of receiver's appointment not time-barred under Uniform Fraudulent Transfer Act because "fraudulent nature of the transfers [could] only be discovered once the Ponzi operator ha[d] been removed from the scene"). As one court explained:

> A receiver stands in the shoes of the corporation and can only assert those claims that the corporation could assert. See Lank v. New York Stock Exchange, 548 F.2d 61 (2nd Cir.1977); Ex Parte Wilkinson, 220 Ala. 529, 126 So. 102 (1930). See also Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815 (1893). Thus, were the court not assuming that LICA was under the domination and control of defrauding officers and directors, the Receiver would be barred by the applicable statute of limitations. But, because of that domination and control, the running of the statute is tolled, but only during the period of domination and control. See generally Armstrong v. McAlpin, 699 F.2d 79 (2nd Cir.1983). That domination and control of LICA ended when the Receiver was appointed on December 15, 1978. The period of tolling ended and the statute began to run at that time.

Hunt v. Am. Bank & Tr. Co. of Baton Rouge, La., 606 F. Supp. 1348, 1356 (N.D. Ala. 1985), aff'd, 783 F.2d 1011 (11th Cir. 1986).

The Receiver was appointed on June 8, 2016 (Doc. 36) and filed his motion within two years of that date. Accordingly, the motion for disgorgement is timely. The Receiver may seek recovery of assets fraudulently transferred within four years prior to his appointment. According to the Receiver's declaration, between January 2, 2013, and June 8, 2016, the Receivership Defendants transferred $8,593,352.60 directly to Kevin

and Shannon Guice, into bank accounts they jointly owned and controlled (Doc. 199-1, ¶ 5). The Guices purchased their house in August 2013 (Declaration of Shannon Guice, Doc. 22-1, ¶ 3). All of these transactions are within the statute of limitations. The objection should be overruled.

>    *(b) Constructive Trust over All Assets Versus Tracing*

The Receiver argues that because the Guices have refused to turn over the funds they improperly received, the Court should impose a constructive trust over all their assets. The Guices argue that this remedy is not appropriate as disgorgement goes solely to specifically identified funds, and absent avoidance and attachment of the actual assets transferred, the only other remedy available is a money judgment under FLA. STAT. § 726.108(1)(c)(3). The Guices maintain that the Receiver can only place a trust over those assets he is able to trace as purchased with ill-gotten gains and not any assets owned by the "innocent" Shannon Guice. The Receiver has the better side of the argument.

Under Florida's Uniform Fraudulent Transfer Act, the Court has broad powers to fashion appropriate relief, and is not limited to attachment of a specific *res* or a money judgment:

>    1. In an action for relief against a transfer or obligation under ss. 726.101-726.112, **a creditor**, subject to the limitations in s. 726.109 may obtain:
>
>    (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
>    (b) **An attachment** or other provisional remedy against the asset transferred **or other property of the transferee** in accordance with applicable law;
>
>    (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

> 1. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>
> 2. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>
> 3. **Any other relief the circumstances may require**.

FLA. STAT. § 726.108 (emphasis added).

The Receiver is a "creditor" in this context, and Shannon Guice's knowledge or lack thereof is not a factor. The Sallah court explained:

> After a corporation, which was used by its principals to defraud investors, has been "cleansed" through receivership the corporation has viable claims "against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." [Freeman v. Dean Witter Reynolds, Inc., 865 So. 2d 543] at 551 [Fla. 2d DCA (2003)]. In other words, **after a corporation has been placed into receivership, it becomes a creditor with respect to assets which were fraudulently transferred away**. In this scenario, the principals, who were operating the illegal scheme, are debtors of the corporation for their fraudulent activities. See id. at 550-51. Further, **recipients of corporate assets are transferees, regardless of whether they were aware of the wrongdoing of the principals**.

Sallah, 860 F. Supp. 2d at 1334-35 (emphasis added). See also Browning v. Browning, 784 So. 2d 1145, 1148 (Fla. 2d DCA 2001) ("imposition of a constructive trust does not depend upon any showing that the party against whom the constructive trust would be imposed has engaged in any type of fraudulent conduct, undue influence, abuse of confidence or mistake....") (internal citation omitted).

Concerning the tracing argument, the Court has given the Receiver broad powers in equity to marshal assets and preserve the receivership estate. When the Receiver was appointed the Court also entered an asset freeze. The asset freeze was appropriate "as a means of preserving funds for the equitable remedy of disgorgement." SEC v. ETS

Payphones, Inc., 408 F.3d 727, 734 (11th Cir. 2005). In imposing an asset freeze, there is no requirement that the assets to be frozen be traced to the wrongdoing. See SEC v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) ("Many district courts faced with this argument agree that "[t]here is no requirement that frozen assets be traceable to the fraudulent activity underlying a lawsuit," quoting SEC v. Dennis Crowley, Case No. 04-80354-Civ-Middlebrooks, Slip. Op. (S.D.Fla. 2004)) (collecting cases)). Similarly, while the amount of the disgorgement must "reasonably approximate[] the amount of unjust enrichment," Commodity Futures Trading Comm'n v. Sidoti, 178 F.3d 1132, 1138 (11th Cir. 1999), "[t]he remedy of disgorgement is not limited to the specific moneys or other assets wrongfully obtained." Branch Banking & Tr. Co. v. Hamilton Greens, LLC, No. 1180507CIVMARRAMATTH, 2016 WL 3251165, at *3 (S.D. Fla. June 14, 2016). As the Circuit Court in SEC v. Banner Fund International, 211 F.3d 602 (D.C. Cir. 2000) explained:

> An order to disgorge is not a punitive measure; it is intended primarily to prevent unjust enrichment. See, e.g., First City Financial Corp., Ltd., 890 F.2d at 1231. Accordingly, a court "may exercise its equitable power [of disgorgement] only over property causally related to the wrongdoing." Id. As the SEC points out, **the requirement of a causal relationship between a wrongful act and the property to be disgorged does not imply that a court may order a malefactor to disgorge only the actual property obtained by means of his wrongful act. Rather, the causal connection required is between the amount by which the defendant was unjustly enriched and the amount he can be required to disgorge.** To hold, as Blackwell maintains, that a court may order a defendant to disgorge only the actual assets unjustly received would lead to absurd results. Under Blackwell's approach, for example, a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an order of disgorgement. Blackwell's would be a monstrous doctrine for it would perpetuate rather than correct an inequity.

SEC v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000) (emphasis supplied). This

rationale has been quoted with approval by the Eleventh Circuit. <u>See</u> <u>FTC v. Leshin</u>, 719

F.3d 1227, 1234 (11th Cir. 2013) (quoting <u>Banner Fund).</u> Thus, to the extent the Guices

maintain that the Receiver may collect only specific funds that are directly traceable, they

are mistaken. To the extent the Receiver has established that funds were improperly

transferred and used by the Guices, the Receiver is entitled to the imposition of a

constructive trust over the Guices' assets not to exceed the amount of the improper

transfers.

*(c) Homestead/Tenancy by Entireties*

The Guices' final objection is that they are entitled to exempt their house from any

constructive trust under Florida's homestead law. The Florida Constitution provides:

> There shall be exempt from forced sale under process of any
> court, and no judgment, decree or execution shall be a lien
> thereon, except for the payment of taxes and assessments
> thereon, obligations contracted for the purchase, improvement
> or repair thereof, or obligations contracted for house, field or
> other labor performed on the realty, the following property
> owned by a natural person:
>
> (1) a homestead ...

Art. X § 4(a)(1), FLA. CONST. "Florida's homestead exemption is to be liberally construed

in the interest of protecting the family home and any challenge to the homestead

exemption claim places a burden on the objecting party to make a strong showing that

the Debtor is not entitled to the claimed exemption." <u>Pasternack v. Klein</u>, No. 8:16-CV-

482-T-33CPT, 2018 WL 1426400, at *4 (M.D. Fla. Mar. 22, 2018) (internal citations

omitted). The Florida Supreme Court has determined that § 726.105 of Florida's

Fraudulent Transfer Act "has no effect on the constitutionally created homestead

exemption." <u>Havoco of Am., Ltd. v. Hill,</u> 790 So. 2d 1018, 1029 (Fla.), opinion after

certified question answered, 255 F.3d 1321 (11th Cir. 2001) (citations omitted). As there

is no dispute that the Guices generally meet the requirements to claim their family home as their homestead, they argue that the homestead exemption applies to shield this asset from the Receiver. Upon close review of the papers and case law, I disagree.

The Florida Supreme Court's conclusion in <u>Havoco</u> is clear:

> The transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the exceptions **only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.**

<u>Havoco</u>, 790 So. 2d at 1028 (emphasis added). The Court's summary judgment findings establish egregious conduct by Kevin Guice. The record also establishes that the Guices utilized a portion of the money Kevin Guice wrongfully received from the Receivership Defendants to purchase and improve the couples' homestead property. Accordingly, these funds are traceable to the homestead under the exception noted in <u>Havoco.</u> <u>See</u> <u>In re Fin. Federated Title & Tr., Inc.</u>, 347 F.3d 880, 881 (11th Cir. 2003) (where husband and wife purchased their home with fraudulently obtained funds the Florida Constitution does not protect their homestead property from an equitable lien or constructive trust); <u>In re Lee</u>, 574 B.R. 286, 293-4 (Bankr. M.D. Fla. 2017) (concluding that it is appropriate to impose an equitable lien and constructive trust on the defendants' homestead to prevent their unjust enrichment from funds traced to a Ponzi scheme).

The Guices argue that Shannon Guice is not a Defendant and there is no finding that she personally participated in her husband and the other Defendants' scheme. Both assertions are true. Nonetheless, as explained by the Eleventh Circuit:

Both this Court, in In re: Fin. Federated Title & Trust, Inc., 347 F.3d 880 (11th Cir.2003), and the Florida Supreme Court, in Palm Beach Savings & Loan Assoc. v. Fishbein, 619 So.2d 267 (Fla.1993), have explained why an equitable lien may be imposed upon property benefited by fraudulent proceeds even where one co-owner spouse is innocent and ignorant of the fraud. The answer is straightforward: if an equitable lien is not placed on the property to the extent Hecker's fraudulently obtained funds benefited the land, Gloria would be unjustly enriched. In re Fin. Federated Title & Trust, Inc., 347 F.3d at 890; Fishbein, 619 So.2d at 270-71. Gloria would effectively receive a "windfall" by way of Hecker's decision to disburse the fraudulently obtained funds to the benefit of the family home. In re Fin. Federated Title & Trust, Inc., 347 F.3d at 890. The homestead exemption would be used as a sword, rather than a shield. Fishbein, 619 So.2d at 271. For this reason, the focus of the equitable lien analysis is "the fraudulent nature of the funds," not whether the co-owner of the property had knowledge of the fraudulent activity. In re Fin. Federated Title & Trust, Inc., 347 F.3d at 890.

In light of Florida's clearly enunciated desire to impose equitable liens when the homesteads were purchased with the fruits of fraudulent activity, we see no reason why Gloria's absence as a party to this action or Gloria's contribution of her own funds to the homestead would preclude the imposition of an equitable lien. The amount of the equitable lien can be no more than the amount fraudulently obtained and used to benefit the land. In re Fin. Federated Title & Trust, Inc., 347 F.3d at 892 (holding that amount of lien must be based upon the amount of funds fraudulently obtained and used to purchase the property). In this way, Gloria stands in no worse of a position than she would absent the transfer of fraudulent funds to the homestead. See id. at 891 (explaining that equitable lien put the defendants in "the same position" as they were before they purchased the homestead with fraud proceeds).

In re Hecker, 264 F. App'x 786, 790-91 (11th Cir. 2008).

The Guices also claim their property held as tenants in the entireties may not be taken, citing McGregor v. Chierico, 206 F.3d 1378 (11th Cir. 2000) (a court cannot use its contempt power to acquire assets owned by innocent individuals, including a home owned by tenancy by the entirety where one spouse was innocent). Chierico is

distinguishable from this case. "[A]lthough the Eleventh Circuit held that a homestead held by a tenancy in the entirety could not be reached in a contempt proceeding because the wife was a completely innocent party to the alleged action that constituted contempt, the Chierico opinion involved a final judgment, not a disgorgement order, and enforcement of a disgorgement order against property (real or personal) has been treated differently by courts from enforcement of a judgment." FTC v. Leshin, No. 06-61851-CIV-UNGARO, 2011 WL 617500, at *19 (S.D. Fla. Feb. 15, 2011), report and recommendation adopted, No. 06-61851-CIV-UNGARO, 2011 WL 845065 (S.D. Fla. Mar. 8, 2011) (internal quotation and citation omitted). The Chierico court said: "Because the district court erred in holding Teri Chierico in contempt, it would be unjust to force her to relinquish any innocently held property rights." Chierico, 206 F.3d at 1386 (11th Cir. 2000). The funds the Guices used to purchase their property was tainted. There is a difference between taking legitimately acquired property as a sanction and imposing a constructive trust on property that was not legitimately acquired. This objection should be overruled.

The Court has good cause to impose an equitable lien and constructive trust on the homestead and any other property the Guices own as tenants by the entirety.

D. Other Considerations

There is an action pending in state court to foreclose a mortgage on the Guices' homestead. This is a concern because the Receiver believes there is substantial equity in that property. There is also a pending motion to alter or amend the Court's summary judgment (Doc. 232) and an Order staying this case as to the FTC due to the current partial federal shutdown (Docs. 233, 234). Additionally, the Receiver does not have an

updated financial disclosure form identifying all the Guices' personal property in his possession or control (Doc. 198, fn. 10).

## Recommendation

Now, I respectfully recommend that the Court **GRANT** the Receiver's motion and issue an Order:

(1) Compelling Kevin Guice and Shannon Guice, jointly and severally, to return or disgorge $8,593,352.60 that they received from the Receivership Defendants.

(2) Directing Kevin Guice to immediately update his financial disclosure.

(3) Imposing a constructive trust over the Guices' homestead located at 3609 Oriskany Drive, Orlando, Florida 32820, the Porsche, jet skis, luxury watches, guns, and all other property the Receiver is able to identify as being subject to the constructive trust, and which is not already in his possession and control.

(4) Compelling the Guices to turn over to the Receiver the all the property over which the Court imposes a constructive trust and authorizing the Receiver to convert that property into cash.

(5) As the Receiver identifies additional property that is under the constructive trust he should submit proposed disgorgement orders identifying the property and then the Guices should have 14 days to respond in opposition to the proposed disgorgement orders.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and

Recommendation. <u>See</u> 11th Cir. R. 3-1.

       **RESPECTFULLY RECOMMENDED** at Orlando, Florida on January 24, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

       Presiding United States District Judge
       Counsel of Record
       Any Unrepresented Parties